UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **KRISTA FULD,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**AMERICAN INCOME LIFE INSURANCE COMPANY,** an Indiana corporation,<br><br>*Defendant*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Krista Fuld ("Plaintiff Fuld" or "Fuld") brings this Class Action Complaint and Demand for Jury Trial against Defendant American Income Life Insurance Company ("Defendant" or "AIL") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Fuld, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

1

## PARTIES

1. Plaintiff Fuld is a resident of Duncanville, Texas.

2. Defendant AIL is a corporation registered in Indiana, with its principal office address located in Indiana. Defendant AIL conducts business throughout this District and throughout the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant formed its corporate and is registered in this District.

## INTRODUCTION

5. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in May 2023 alone, at a rate of 164.0 million per day. www.robocallindex.com (last visited June 14, 2023).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

3

Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

13. AIL sells supplemental insurance benefit plans to consumers throughout the U.S.[3]

14. AIL places solicitation calls to consumers to solicit its insurance plans.

15. Unfortunately, some of these calls from AIL are being placed to consumers without consent, including to consumers that registered their phone numbers on the DNC, as per Plaintiff's experience.

16. AIL employees have posted job reviews and Linkedin job summaries showing that they were required to engage in placing cold calls in order to generate business, including:

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/american-income-life/about/

Current Employee, less than 1 year

## Cold Calling with Zero Employee Investment

Jun 4, 2023 - Life Insurance Sales Representative in West Pittsburg, PA

✘ Recommend     ✘ CEO Approval     ✔ Business Outlook

Pros

You can take off time whenever you want. Working from home is nice.

Cons

No paid training. Not financial assistance. Nothing in the way of a company actually caring about you. They don't care about you, so make sure you understand that. You get are some phone numbers of people who have no idea what they signed up for. They are not aware that they are going to be called. Most people think they are just getting some free stuff and are shocked when they learn that you are trying to sell them something. The whole sales process is a mess. They ask you to make 1000 - 1500 calls a week, which is impossible unless you don't have a life and just make calls all day every day. [4]

1.0 ★ ☆ ☆ ☆ ☆

Enrollment Specialist | Remote | May 15, 2023

## High energy and exciting to start, followed by grimy dirty feeling about two months in.

What is the best part of working at the company?
Remote position. High energy vibes.

What is the most stressful part about working at the company?
TERRIBLE training. Personally I feel the way they did things was dishonest, immoral, & unethical.

What is the work environment and culture like at the company?
Depends on the team you are put on. The team I was a part of was want to be frat bros.

What is a typical day like for you at the company?
0900-meetings until 1100 or 1200
1200-2000 cold calling ppl. They call it "warm leads" but ppl really didn't sign up to be called and you're taught to just use them to get to their family and friends. [5]

---

[4] https://www.glassdoor.com/Reviews/American-Income-Life-Insurance-Sales-Agent-Reviews-EI_IE107579.0,20_KO21,42.htm
[5] https://www.simplyhired.com/company/American+Income+Life

5



**1.0** ⭐

Agent | Texas | May 21, 2023

**Wish they were more transparent**

Working here was fun until the truth came out. I was told previously at training that it was paid. I sat with my coach for 8hrs a day and only got paid $45 just for one. They left out the part that I would be cold calling. If I would of known ghat I would of never accepted the job

Cons: not transparent and hide the truth [6]

you memorize it. After the LLQP course you also have to pay $150 for your insurance license to be finalized and must pay them back for the e&o insurance which is $350. They also did not directly tell me that it was a commission only job until the time that I had to accept the job offer. You are also expected to have a Windows 10 computer which you have to purchase if you don't already have one which is at least another $200. They also said that there was no cold calls which is a complete lie as they way you get clients is by responding to people that apply for child safe kits or filled out cards from their unions...once you set up times with those people you go to their house (this is not an office job) and give them no cost benefits and then try to convert them into permanent insurance sales. Now when you sign up for the child safe kits it does state that you will be contacted by an insurance agent and that they will be giving you the opportunity to enrol in their benefits but the script that you use during the appointments is kind of misleading and condescending to the clients. It is also mandatory for you to collect referrals at each house and then have to call those referrals on the spot with the client that saying that so and so has sponsored you for no cost benefits and that you have to deliver it and explain it to them...when and if you do book an appointment with the prospects you then go to their house with the no cost package and then try to force a permanent insurance sale onto them as well. [7]



**jamel michael**
insurance agent at American Income Life Insurance Company

**Experience**

**insurance agent**
American Income Life Insurance Company
Jun 2015 - Present · 8 yrs 1 mo

Sales/ cold calling. Meeting with clients face to face. rapport building [8]

---

[6] Id.
[7] Id.
[8] https://www.linkedin.com/in/jamel-michael-161859105/


17. To make matters worse, AIL lacks a sufficient opt-out system to ensure that a consumer who notifies an AIL employee to stop calling them will be removed from their calling list.

18. A number of consumers have posted complaints online directly to AIL about unsolicited telemarketing calls, including complaints from consumers who were unable to get AIL to stop calling when they opted out, including:

- "Didn't request Insurance from these people"[9]
- "65 calls"[10]
- "calling too many times. not interested."[11]
- "Unsolicited call"[12]
- "Spam company will call you and text you at the same time."[13]

19. In response to these calls, Plaintiff Fuld brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

**PLAINTIFF FULD'S ALLEGATIONS**

20. Plaintiff Fuld registered her cell phone number on the DNC on March 9, 2012.

---

[9] https://lookup.robokiller.com/p/800-411-8808
[10] Id.
[11] Id.
[12] https://www.shouldianswer.com/phone-number/4844454331
[13] https://800notes.com/Phone.aspx/1-214-295-8352

7

21. Plaintiff Fuld uses her cell phone number for personal use only as one would use a landline telephone number in a home.

22. The calls that Plaintiff Fuld received from Defendant AIL were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

23. On May 8, 2023 at 9:24 AM, Plaintiff Fuld received an unsolicited call to her cell phone number from Defendant AIL, from 207-550-8205. The purpose of the call was to solicit a legacy will kit. Plaintiff told the caller that she was not interested and asked for the calls to stop.

24. This free will kit is a pretext for AIL's employees to discuss the consumer's estate planning vision and to then pitch the consumer on purchasing life insurance from AIL.

25. Despite Plaintiff's request for the calls to stop, the Plaintiff continued to receive the following unsolicited calls to her cell phone number, all of which were answered and in most of the calls Plaintiff told the callers to stop calling her:

- May 8, 2023 at 7:39 PM from 541-238-5228
- May 9, 2023 at 8:39 AM from 214-306-4030
- May 16, 2023 at 3:41 PM from 346-498-6016
- May 17, 2023 at 9:17 AM from 346-498-6016
- May 19, 2023 at 2:22 PM from 832-509-3502
- May 19, 2023 at 2:25 PM from 832-509-3502
- May 21, 2023 at 4:01 PM from 832-509-3502
- May 22, 2023 at 7:15 AM from 832-906-2760
- May 22, 2023 at 3:21 PM from 832-906-2760

- May 24, 2023 at 10:18 AM from 817-807-5605

26. On May 29, 2023 at approximately 9:30 AM, Plaintiff Fuld received an unsolicited call from Defendant AIL to her cell phone number, from 740-274-2380. As with the previous calls, the call was regarding the legacy will kit. The employee did not indicate a company name so Plaintiff asked for the company name. She was told the company is American Income Life. Plaintiff then told the employee to stop calling her phone number and hung up.

27. On June 15, 2023 at 3:33 PM, Plaintiff Fuld received 2 back-to-back calls from Defendant AIL to her cell phone from phone number 240-936-4894.

28. All of the phone numbers that Plaintiff Fuld was called by were spoofed – meaning they are either not in service or connect to consumers that do not place telemarketing calls. The only way that the Plaintiff was able to finally identify the Defendant was when she asked a live caller who she worked for.

29. Plaintiff Fuld has never done business with AIL and has never given them consent to call her phone number.

30. The unauthorized solicitation telephone calls that Plaintiff Fuld received from or on behalf of Defendant AIL have harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

31. Seeking redress for these injuries, Plaintiff Fuld, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

32. Plaintiff Fuld brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) AIL called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant AIL called more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling.

33. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally

adjudicated and/or released. Plaintiff Fuld anticipates the need to amend the Class definition following appropriate discovery.

34. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) Whether Defendant's conduct violated the TCPA;

    (b) Whether Defendant placed multiple calls within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call;

    (c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

    (d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

36. **Adequate Representation**: Plaintiff Fuld will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Fuld has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Fuld and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Fuld nor her counsel have any interest adverse to the Classes.

37. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Fuld. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on

an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Fuld and the Do Not Call Registry Class)**

38. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

39. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

40. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

41. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Fuld and the Do Not Call Registry Class members who registered their respective

13

telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

42. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Fuld and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

43. As a result of Defendant's conduct as alleged herein, Plaintiff Fuld and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

44. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Fuld and the Internal Do Not Call Class)**

45. Plaintiff repeats and realleges paragraphs 1 through 37 of this Complaint and incorporates them by reference herein.

46. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900

number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47. Defendant placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

48. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

49. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of

16

Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Fuld requests a jury trial.

**KRISTA FULD**, individually and on behalf of all others similarly situated,

DATED this 10th day of August, 2023.

<div style="margin-left: 40%;">

By: /s/ Eric C. Bohnet
Eric C. Bohnet
Attorney at Law
6617 Southern Cross Dr.
Indianapolis, IN 46237
317-750-8503
ebohnet@gmail.com


Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

</div>