**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| KRISTA FULD, on behalf of herself and all others similarly situated, | Case no. 1:23-cv-01420-JPH-MG |
| *Plaintiff*, | **CLASS ACTION** |
| *v.* | |
| AMERICAN INCOME LIFE INSURANCE COMPANY, | |
| *Defendant*. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

### I.    INTRODUCTION

This proposed class action under the Telephone Consumer Protection Act's National Do Not Call Registry provision arises from repeated telemarketing calls by insurance agents affiliated with Defendant American Income Life Insurance Company to 49,695 consumers whose National Do Not Call Registry registered telephone numbers were purchased by American Income Life Insurance Company agents from an approved vendor (The Solution HQ) based on the consumers' visits to the website TheFreeWillKit.com, which provided them the opportunity to sign up to receive a kit containing a form will and testament and related documents.

After more than 18 months of hard-fought litigation, Plaintiff Krista Fuld ("Plaintiff") and Defendant American Income Life Insurance Company ("AILIC" or "Defendant") have reached a Class Action Settlement Agreement and Release (the "Agreement" or "Settlement") resolving these claims,[1] which subject to this Court's approval, creates a non-reversionary common fund of $14,000,000 for the benefit of Plaintiff and proposed class members who were called by AILIC affiliated insurance agents to solicit AILIC's insurance products. Declaration of Avi Kaufman, ECF 58-2, ¶ 4.

---

[1] The Agreement can be found at ECF 58-1. Capitalized terms used herein, unless otherwise defined, have the same definitions as those terms in the Agreement.

This amounts to more than $280 before claims for each of the 49,695 potential Settlement Class Members, all of whom have been identified in AILIC's records. *Id.* ¶ 5. This far exceeds settlements in similar TCPA cases predicated on the defendant's vicarious liability. *Id.*; *see, e.g., Kimble v. First Am. Home Warranty Corp. & Fivestrata LLC*, No. 23-10037, 2024 U.S. Dist. LEXIS 118951 (E.D. Mich. July 8, 2024) ($700,000 settlement fund for a 21,953 person class, equating to $31.89 per class member before claims); *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165 (S.D. Tex. June 25, 2024) ($2,000,000 settlement fund for a class of over 50,000 persons, equating to less than $40 per class member before claims); *Shelton v. Agentra*, No. 18-615, 2021 U.S. Dist. LEXIS 144659 (W.D. Pa. Aug. 3, 2021) ($275,000 settlement fund for a 19,860 person class, equating to $13.85 per class member before claims); *Larson v. Harman-Management Corp.*, No. 1:16-cv-00219-DAD-SKO, 2020 U.S. Dist. LEXIS 107938 (E.D. Cal. June 18, 2020) ($4,000,000 settlement fund for a 223,026 person class, equating to $17.17 per class member before claims).

In addition to being used to make payments to Settlement Class Members, the Settlement Fund will be used to pay the Settlement Administrator, any attorneys' fees and costs awarded to Class Counsel, and any Service Award to Plaintiff.

The parties reached the Settlement after more than 18 months of contentious litigation, which included significant written fact discovery, third party discovery, and Defendant's deposition. *See* Kaufman Decl. ¶ 6. By the time the parties finalized the Agreement, they were well aware of the strengths and weaknesses of their respective positions and the risks associated with pursuing this TCPA case through class certification and trial. *Id*.

In addition, to discuss settlement, the parties engaged in a full-day mediation session with mediator Jill Sperber, Esq. of Judicate West, followed by subsequent telephonic negotiations and a second half-day mediation session with Ms. Sperber, resulting in a mediator's proposal, before coming to an agreement. Kaufman Decl. ¶ 7; *see, e.g., Rankins v. Arca Cont'l S.A.B. de C.V.*, No. 20-CV-1756 (ENV) (TAM), 2024 U.S. Dist. LEXIS 197597, at *15 (E.D.N.Y. Oct. 30, 2024) ("As to the parties' selected mediator, Jill Sperber, several courts have held that Ms. Sperber's

involvement has supported a finding that class-action settlement agreements were fair. Additionally, as noted above, Plaintiffs represent that the mediation was one full day session and that the parties needed a second session and a mediator's proposal to come to an agreement. Based on the record in this case, there is no evidence or indicia suggesting that the negotiations were collusive." (cleaned up)).

If approved, the Settlement will bring an end to what has otherwise been, and likely would continue to be, hard-fought litigation centered on unsettled legal questions. The proposed settlement is fair, reasonable, adequate, and the anticipated Settlement Class Member payments will far exceed the payments in similar TCPA cases in this District and across the country. *See, e.g., Simms v. Exacttarget, LLC*, No. 1:14-cv-00737-WTL-DLP, 2018 U.S. Dist. LEXIS 245963 (S.D. Ind. Oct. 2, 2018) ($6,250,000 settlement fund for a 528,451 person class, equating to $11.83 per class member before claims); *Fralish v. Ceteris Portfolio Servs., LLC*, No. 3:22-CV-176 DRL-MGG, 2023 U.S. Dist. LEXIS 167924 (N.D. Ind. Sep. 15, 2023) ($761,850 settlement fund for a 8,465 person class, equating to $90 per class member before claims); *Ashack v. Caliber Home Loans, Inc.*, No. 1:15-cv-01069-JMS-DML, 2017 U.S. Dist. LEXIS 92881 (S.D. Ind. June 16, 2017) ($2,895,000 for a 244,685 person class, equating to $11.83 per class member before claims).

Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed settlement class; (3) appoint as class counsel Avi R. Kaufman of Kaufman P.A. and Stefan Coleman of Coleman PLLC; (4) appoint Plaintiff as class representative; (5) approve the proposed notice plan; (6) appoint Kroll Settlement Administration to serve as Settlement Administrator; and (7) schedule the final fairness hearing and related dates.

## II.    BACKGROUND

### A. The Telephone Consumer Protection Act

The Telephone Consumer Protection Act, 47 U.S.C. § 227, and its implementing regulations were enacted by Congress and the Federal Communications Commission to "offer consumers greater protection from intrusive telemarketing calls…." The TCPA's sponsor

described unwanted robocalls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991). As a remedial statute that was passed to protect consumers from unsolicited automated telephone calls, the TCPA is construed broadly to benefit consumers. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

### B. Procedural History

On August 11, 2023, Plaintiff Krista Fuld filed a complaint against AILIC in this action asserting that Defendant violated the TCPA by making unsolicited telemarketing calls to consumers whose numbers are on the National Do Not Call Registry. On September 29, 2023, AILIC moved to dismiss the complaint. ECF 18. On November 3, 2023, Plaintiff filed an amended complaint bolstering the allegations related to the telemarketing purpose of the calls. ECF 26.

On November 17, 2023, Defendant filed a motion to dismiss the amended complaint. ECF 31. Plaintiff responded in opposition to the motion (ECF 35), and Defendant replied in support (ECF 36). On May 9, 2024, the Court denied the motion to dismiss. ECF 40. AILIC answered the amended complaint on May 23, 2024. ECF 42.

Since inception, the case has involved extensive discovery. On November 14, 2023, Plaintiff served written discovery requests on Defendant. Defendant responded to discovery, and the parties engaged in lengthy meet and confers which resulted in Defendant supplementing its responses. Kaufman Decl. ¶ 10.

On April 25, 2024, Plaintiff served a second set of requests for production on Defendant. On May 21, 2024, Defendant served its first set of discovery on Plaintiff and served its response to Plaintiff's second set of requests on June 11, 2024. *Id.* ¶ 11.

On September 9, 2024, based on information obtained through the first two sets of discovery, Plaintiff served a third request for production on Defendant, specifically seeking call logs and related information for calls made by a specific group of AILIC affiliated agents associated with the Fisher-Zuzick agency to leads generated by a specific AILIC approved vendor

4

using the website, TheFreeWillKit.com. *Id.* ¶ 12.

Plaintiff also engaged in third party discovery, subpoenaing AILIC's agents associated with the Fisher-Zuzick agency, Brian Zuzick and Laura Fisher, and lead vendor and operator of TheFreeWillKit.com, The Solution HQ. *Id.* ¶ 13.

In addition to written first and third party discovery, Plaintiff also took Defendant's representative Melissa Guest's deposition, including regarding the purchased leads for and resulting calls to Settlement Class Members. *Id.* ¶ 14.

On January 8, 2025, the parties participated in an all-day mediation with Jill Sperber, Esq. with Judicate West. *Id.* ¶ 15. On February 6, 2025, after continuing telephonic negotiations with Ms. Sperber's assistance in the interim, the parties engaged in an additional half-day mediation, resulting in a mediator's proposal and ultimately the agreement as to the framework of a class-wide resolution. *Id.* The parties worked over the following weeks to reach a formal written class settlement agreement. *Id.*

The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the Litigation against Defendant through trial and appeals. Class Counsel also has taken into account the difficulties in obtaining class certification and proving liability in TCPA cases involving vicarious liability, consent, and established business relationship defenses, and the risk that, even if successful at trial, Settlement Class Members could ultimately recover only a *de minimis* amount. *Infra* at § V.B. Class Counsel believes that the proposed Settlement is an excellent result for the Settlement Class, exceeding the per class member monetary amounts of settlements in substantively similar TCPA cases. Based on their evaluation of all of these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class. Kaufman Decl. ¶ 16.

Class Counsel believes that the proposed Settlement confers substantial and immediate benefits upon the Settlement Class whereas continued and protracted litigation might ultimately deliver none. *Id*. ¶ 17. Based on their evaluation of all these factors, Plaintiff and Class Counsel have determined that the Settlement is in the best interests of the Plaintiff and the Settlement Class.

*Id.*

### III. THE PROPOSED SETTLEMENT

#### A. The Settlement Class

The proposed Settlement Class includes: all persons (1) associated with 49,695 unique telephone numbers identified by Defendant (2) that were registered on the National Do Not call Registry for at least 30 days and (3) to which more than one call was placed on behalf of Defendant within any 12 month period between August 11, 2019 and December 4, 2024 (4) who were not American Income Life Insurance Company insureds. Excluded from the Settlement Class are: (1) the Judges presiding over this action and members of their families; (2) the Defendant, Defendant's respective subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded person(s). Agreement at § 1.1.35.

#### B. Settlement Relief

The Settlement provides meaningful monetary relief. Pursuant to the Agreement, a non-reversionary common fund will be created to which Defendant will contribute $14,000,000 for the purpose of making all required payments under the Settlement. Agreement at §§ 1.1.37 and 4.

#### C. Class Counsel Fees and Expenses and Service Award

Pursuant to the Agreement, Class Counsel will request that the Court approve an award of attorneys' fees, reimbursement of documented and reasonable costs and expenses, and a Service Award for Representative Plaintiff. Agreement at § 5.1. The Parties agree that the Court's failure to approve, in whole or in part, any award of attorneys' fees and expenses or a Service Award shall not prevent the Settlement from becoming effective, nor shall it be grounds for termination. Agreement at § 5.2. Defendant retains the right to object to any request for a Fee Award or Service Award. *See* Agreement at § 5.1.

### D.    Notice Program

Settlement Administrator will use customary procedures including, third party services, to identify mailing and email addresses for any Settlement Class Members for whom the parties do not have such information based on their submissions to TheFreeWillKit.com. Agreement at § 6.5.2. Within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall send direct notice substantially in the form of the Summary Notice in Exhibit C, as modified and/or approved by the Court, via U.S. Postal Service to any Settlement Class Member for which a mailing address is identified, and by email to any Settlement Class Member for which an email address is identified. The Settlement Administrator will use customary procedures, including a search of the United States Postal Service's National Change of Address database, to update Settlement Class Members' addresses. The Settlement Administrator will use customary procedures, including third party services, to identify an alternate address for any Settlement Class Member for whom a mailed notice is returned as undeliverable, and promptly remail notice to them. Agreement at § 6.5.3.

The proposed notice includes, among other information: a description of the material terms of the Settlement, a date by which members of the Settlement Class may exclude themselves from or "opt-out" of the Settlement Class; a date by which members of the Settlement Class may object to the Settlement; and the date upon which the Final Approval Hearing is scheduled to occur.

Also within thirty (30) days after the Court enters the Preliminary Approval Order, the Settlement Administrator shall create a Class Settlement Website that will contain information about the Settlement and case-related documents such as the Settlement Agreement, the Long-Form Notice in the form attached to the Settlement as Exhibit B, subject to Court modification and/or approval, the Claim Form, the Preliminary Approval Order, Class Counsel's application for a Fee Award and Service Award, and the Complaint. Settlement Class Members shall have the option to file a claim electronically using the Class Settlement Website.

The anticipated administration costs are $149,931.56. *See* Declaration of Scott Fenwick of Kroll Settlement Administration LLC, ECF 58-3, at ¶ 18. Those costs are reasonable compared to

the size of the Settlement Fund and in light of the costs for providing direct notice by mail and email and mailing settlement payments to Settlement Class Members who submit valid claims. *See id.*

### E.      Claims

To obtain a payment from the Settlement, Settlement Class Members must timely submit by mail or online via the Class Settlement Website a valid Claim Form substantially in the form of Exhibit A to the Settlement, as modified and/or approved by the Court, by the Claims Deadline. All Claim Forms must be submitted to the Settlement Administrator by the Claims Deadline. A valid Claim Form means a Claim Form containing all required information, including a unique claimant identifier, and which is signed by the claimant and is submitted timely. Any Claim Form which is not timely submitted shall be denied. In the event a Settlement Class Member submits a Claim Form by the Claims Deadline but the Claim Form is not complete, then the Settlement Administrator shall give such Settlement Class Member a reasonable opportunity to provide any requested missing information. For any Settlement Class Member who submits a Claim Form determined by the Settlement Administrator to be incomplete, the Settlement Administrator shall mail a notice directly to such Settlement Class Member, notifying him or her of the missing information and providing him or her with an opportunity to cure (the "Cure Notice"). Settlement Class Members must cure incomplete claims on or before the Effective Date. Agreement at § 7.

Each Settlement Class Member who submits an Approved Claim shall be entitled to payment in an amount equivalent to their *pro rata* share of the Settlement Fund after any approved Service Award, Fee Award, and Settlement Administration Expenses are deducted. Agreement at § 4.3.2. Payments will be made directly to Settlement Class Members by the Settlement Administrator and are anticipated to be more than $500 each. Kaufman Decl. ¶ 5.

### F.      Opt-Out and Objection Procedures

Any Class Member who has not submitted a timely written exclusion request and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement Agreement must submit written objections to the Clerk of the Court postmarked by the Opt-Out Deadline. Any

objection regarding or related to the Settlement Agreement must include: (i) the objector's name, address, and telephone number; (ii) the phone number(s) at which he or she received calls covered by this Settlement; and (iii) the factual basis and legal grounds for the objection. Only Settlement Class Members who submit timely objections may speak at the Final Approval Hearing. If a Settlement Class Member makes an objection through an attorney, the Settlement Class Member will be responsible for his or her personal attorney's fees and costs. Settlement at § 9.2.

Settlement Class Members may elect not to be part of the Class and not to be bound by this Settlement Agreement. Individual requests for exclusion may be submitted to the Settlement Administrator by mail and postmarked no later than the Opt-Out Deadline. No mass opt-outs are allowed. All requests for exclusion must be in writing and signed by the Settlement Class Member, include the Settlement Class Member's name, address, and the phone number(s) at which he or she received calls covered by this Settlement, and clearly state that the Person wishes to be excluded from the Litigation and the Settlement. Settlement at § 9.4.

### G.    Release

The Release is narrowly tailored under the Agreement and means all claims, demands, causes of actions, suits, damages, and/or fees that arise out of or relate in any way to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") or related federal or state laws by Defendant or its agents through the date of preliminary approval. Agreement at § 1.1.27.

### IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Plaintiff respectfully requests that the Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3). Such certification will allow the Settlement Class to receive notice of the Settlement and its terms, including the right to submit a claim and recover money if the Settlement is approved, the right to be heard on the Settlement's fairness, the right to opt out of the Settlement, and the date, time and place of the Final Approval Hearing. For the following reasons, certification of the Settlement Class for settlement purposes is appropriate under Rule 23(a) and (b)(3).

### A. Rule 23(a) requirements

<u>Numerosity is satisfied.</u>

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set minimum number of potential class members that fulfills the numerosity requirement. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

The proposed Settlement Class consists of 49,695 Settlement Class Members whose National Do Not Call registry registered telephone numbers were repeatedly called by AILIC affiliated agents associated with the Fisher-Zuzick agency on behalf of AILIC as a result of their visit to TheFreeWillKit.com, and that have been identified in records produced by Defendant. *See* Kaufman Decl. ¶ 19.

Numerosity is therefore satisfied.

<u>Commonality is satisfied.</u>

Rule 23(a)(2) requires that there is "a common question of law or fact among the members of the class." Fed. R. Civ. P. 23(a)(2). To meet the commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, the common questions are dispositive and apply equally to all class members. They include: (1) whether Defendant is vicariously liable for calls made by the agents associated with the Fisher-Zuzick agency; (2) whether by submitting a request for a "free will kit" on the TheFreeWillKit.com Settlement Class Members consented to AILIC's agents' calls; and (3) whether by submitting a request for a "free will kit" on the TheFreeWillKit.com Settlement Class Members created established business relationships, as defined by the TCPA, with AILIC and its agents. Kaufman Decl. ¶ 20.

These common questions drive the determination of AILIC's liability to all Settlement Class Members and can be resolved using common proof given that Settlement Class Members' leads were generated, purchased, and called in the same manner and for the same reason by agents

10

sharing the same relationship with AILIC. This common proof includes: the form contracts between AILIC and Fisher-Zuzick agency agents, AILIC's uniform policies and procedures applicable to all agents, testimony and documents reflecting the relationship between AILIC and The Solution HQ, and the contents of the website TheFreeWillKit.com during the relevant time period. *Id*. ¶ 21.

And the common questions can also be resolved using common legal analysis given the uniformity of the law applicable to these questions to all Settlement Class Members—federal common law agency principles and the TCPA and its implementing regulations. *Id*. ¶ 22; *see, e.g., Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020) ("under federal common-law principles of agency, there is vicarious liability for TCPA violations"); 47 C.F.R. §§ 64.1200(c)(2)(ii), (f)(5) (setting forth the requirements for consent and established business relationship defenses to a claim under the TCPA's National Do Not Call Registry provision).

Commonality is therefore satisfied.

<u>Plaintiff's claim is typical of the Settlement Class's claims.</u>

For similar reasons, Plaintiff's claim is reasonably coextensive with the claims of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. Typicality is satisfied where the claims are based on the same legal theory. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *see Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality. We have previously stated that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."") (quoting *De La Fuente v. Stokley-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983)).

Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: calls placed by AILIC affiliated agents to leads purchased from AILIC approved lead vendor Solutions HQ procured via the website TheFreeWillKit.com. Plaintiff and proposed

11

Settlement Class members all seek the same statutory damages for these calls pursuant to the same legal theory. Kaufman Decl. ¶ 23.

Typicality is therefore satisfied.

Plaintiff and counsel will adequately represent the proposed Settlement Class.

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy under Rule 23(a)(4) requires (1) a plaintiff's attorney to be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Wood v. Capital One Auto Fin., Inc.*, No. 06-CV-7, 2006 U.S. Dist. LEXIS 67513, at *8 (E.D. Wis. Sep. 19, 2006).

Both of these requirements are easily met.

Plaintiff's interests in this litigation are aligned with those of the class: all seek the same recovery for the same type of unlawful calls that they received in the same manner for the same reason pursuant to the same federal statute that provides them the same measure of statutory damages. Kaufman Decl. ¶ 24.

Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, and TCPA class actions, in particular. Class Counsel has vigorously litigated this action and will continue to vigorously prosecute this matter through completion. *See Id*. ¶¶ 25-31 and Exhibit 1 thereto.

Adequacy is therefore satisfied.

### B. Rule 23(b)(3) requirements

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809, 131 S. Ct. 2179, 2184 (2011).

12

<u>Common issues predominate.</u>

Rule 23(b)(3) requires that "common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015). This case is particularly well-suited for class treatment. The central issues in this case are (1) whether Defendant is vicariously liable for calls made by the agents associated with the Fisher-Zuzick agency; (2) whether by submitting a request for a "free will kit" on the TheFreeWillKit.com Settlement Class Members consented to AILIC's agents' calls; and (3) whether by submitting a request for a "free will kit" on the TheFreeWillKit.com Settlement Class Members created established business relationships, as defined by the TCPA, with AILIC and its agents. Kaufman Decl. ¶ 20. A trial would focus on the common evidence necessary to resolve these common issues driving the determination of AILIC's liability as to all Settlement Class Members. *Id*.

Predominance is therefore satisfied.

<u>A class action is superior.</u>

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy.

"The factors in determining superiority include (1) class members' interests in pursuing individual actions, (2) any existing individual litigation, (3) judicial efficiency, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)—(D)." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 318 F.R.D. 712, 725 (N.D. Ill. 2016) (granting adversarial class certification in a TCPA case).[2] "Here, class members have little economic incentive to sue individually, there are no existing individual lawsuits, and judicial efficiency is best served by adjudicating all claims in one proceeding." *Id*.; *see* Kaufman Decl. ¶ 23.

Superiority is therefore satisfied.

---

[2] Since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods.,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.  The settlement approval process

A class action settlement requires court approval. Fed. R. Civ. P. 23(e). As a matter of public policy, courts favor settlement of class actions for their earlier resolution of complex claims and issues, which promotes the efficient use of judicial and private resources. *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888 (7th Cir. 1985). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

Approval of a class action settlement is a two-step process of "preliminary" and "final" approval. *See Manual for Complex Litig.* ("MCL 4th") § 21.632, at 414 (4th ed. 2004). Preliminary approval is the first step, requiring the Court to make a preliminary determination that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *George v. CNH Health & Welfare Ben. Plan*, No. 16-CV-1678-JPS, 2017 U.S. Dist. LEXIS 152904, at *1 (E.D. Wis. Sep. 20, 2017) (quoting *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002)).

At the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" to warrant sending notice to class members and proceed to a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *see also Newberg on Class Actions* § 13:13 (5th ed. 2016) ("Bearing in mind that the primary goal at the preliminary review stage is to ascertain whether notice of the proposed settlement should be sent to the class, courts sometimes define the preliminary approval standard as determining whether there is 'probable cause' to submit the [settlement] to class members and [to] hold a full-scale hearing as to its fairness.").

In the second step, after notice is provided to settlement class members and time and opportunity for them to object or otherwise be heard, the court considers whether to grant final approval of the settlement as fair and reasonable under Rule 23. *Id*. This procedure safeguards

class members' due process rights and enables the Court to fulfill its role as the guardian of class interests. *See Newberg on Class Actions* § 13:1 (5th ed. 2016).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Lambert v. Tellabs, Inc.*, No. 13-cv-07945, 2015 U.S. Dist. LEXIS 156284, at *4-5 (N.D. Ill. Mar. 5, 2015) ("To secure preliminary approval, parties need only show something analogous to 'probable cause' to proceed with the settlement review process.").

## B. Criteria for settlement approval

Fairness, reasonableness, and adequacy are the touchstones of class action settlement approval. *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017); *see* Fed. R. Civ. P. 23(e) (identifying relevant factors for settlement approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate…; and (D) the proposal treats class members equitably relative to each other.").

"Courts generally consider a number of factors, including: (1) the strength of the Plaintiff's case compared to the amount of Defendant's settlement offer; (2) an assessment of the likely complexity, length, and expense of continued litigation; (3) an evaluation of the amount of opposition to the settlement by affected parties; (4) the opinion of competent, experienced counsel; and (5) the stage of the proceedings and the amount of discovery completed at the time of settlement." *Simms*, 2018 U.S. Dist. LEXIS 245963, at *12-13.

Courts in the Seventh Circuit have "repeatedly stated that the most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement. In analyzing this factor, the district court should consider the range of possible outcomes and ascribe a probability to each point on the range. This requires acknowledgment of potential defenses and the risk of failure for the class.

15

However, [the Seventh Circuit has] instructed the district courts to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights. [It has] also taught that the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indications that the settlement reasonably reflects the relative merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 284-85 (7th Cir. 2017); *see* Fed. R. Civ. P. 23(e)(2)(A)-(B). All of these factors favor approving the settlement here.

Here, the parties reached a settlement after more than 18 months of contentious litigation, including significant discovery. Kaufman Decl. ¶ 4. Class Counsel conducted a thorough investigation and analysis of Plaintiff's and the Settlement Class's TCPA claims and Defendant's vicarious liability, consent, and established business relationship defenses by engaging in extensive formal discovery with Defendant, including three rounds of written discovery to Defendant and the deposition of the Senior Vice President of AILIC's Sales Division which oversees AILIC's relationship with affiliated agents, including agents affiliated with the Fisher-Zuzick agency, and third party subpoenas to agents affiliated with the Fisher-Zuzick agency and The Solution HQ. *Id*. ¶ 32. Class Counsel's review of that discovery and attendant issues enabled them and Plaintiff to gain an understanding of the evidence related to central questions in the action and prepared them for well-informed settlement negotiations. *Id*. In fact, Class Counsel's efforts have exceeded the work often done in class actions to conduct a thorough analysis of the issues prior to settlement. *Cf. Williams v. Costco Wholesale Corp.*, No. 02-cv-2003, 2010 U.S. Dist. LEXIS 19674, at *16 (S.D. Cal. Mar. 4, 2010) ("Plaintiff ha[d] sufficient information from investigation and from informal discovery").

Plaintiff and Plaintiff's counsel were well aware of the risks they faced if they continued to litigate, particularly the risks inherent in seeking to certify TCPA cases involving vicarious liability, consent, and established business relationship defenses. *Id.* ¶ 33; *see, e.g., Cunningham v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2022 U.S. Dist. LEXIS 113573, at *14 (D. Utah June 23, 2022) ("Consent obviously requires individualized inquiry."); *Heidarpour v. Vision Solar*

16

*LLC*, No. 20-2185, 2022 U.S. Dist. LEXIS 72607, at *9 (E.D. Pa. Apr. 20, 2022) (holding in abeyance plaintiff's motion for class certification for the parties to conduct "additional discovery on the issue of agency"); *Hirsch v. USHealth Advisors, LLC*, 337 F.R.D. 118, 132 (N.D. Tex. 2020) ("Each relationship, and Defendants' control over each relationship, could be different."); *Alpha Tech Pet, Inc. v. Lagasse, LLC*, No. 16 C 513, 2017 U.S. Dist. LEXIS 182499, at *12 (N.D. Ill. Nov. 3, 2017) ("Numerous courts have found that context-dependent questions regarding consent 'preclude certification under Rule 23(b)(3)' on predominance or superiority grounds."); *Fitzhenry v. ADT Corp.*, No. 14-80180-MIDDLEBROOKS/BRAN, 2014 U.S. Dist. LEXIS 166243, at *18 (S.D. Fla. Nov. 3, 2014) ("The Court, therefore, finds that individual issues exist as to whether the call recipients had an established business relationship with Defendants.").

Plaintiff's counsel also has taken into account the risks associated with pursuing this case through trial and appeal, including the uncertain outcome and risk of the litigation, especially in complex actions such as this one involving vicarious liability based claims, and the inherent delays in complex litigation. Kaufman Decl. ¶ 34; *see, e.g., Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 797 (7th Cir. 2018) (acknowledging that "a primary source of risk was plaintiffs' reliance on a theory of vicarious liability, which created legal and factual complications that do not arise when plaintiffs pursue only direct liability" in affirming a district court's approval of a TCPA settlement).

In fact, even if Plaintiff and the Settlement Class were to prevail at trial, the jury could choose to award them only a *de minimis* amount in damages on a per violation basis, see 47 U.S.C. (c)(5) (providing for "up to $500" per call). Plaintiff and the Settlement Class would also likely face a post-verdict motion to reduce the judgment amount based on recent circuit court guidance specifically in TCPA cases. *See, e.g., Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022) (citing *Golan v. FreeEats.com, Inc.*, 930 F.3d 950 (8th Cir. 2019) (affirming district court's reduction of statutory damages by 98%, from $500 to $10 per violation for TCPA)).

Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to class certification and then trial. Defendant

denies any liability and is willing to litigate vigorously. The Parties recognize and acknowledge the expense and length of continued proceedings that would be necessary to prosecute the litigation against Defendant through class certification, trial, and potential appeals. Kaufman Decl. ¶ 35.

Plaintiff relied on the judgment of its counsel, who have extensive experience litigating, settling, and trying TCPA and other class actions. *Id*. ¶¶ 25-30. In such circumstances, it may be presumed that a settlement is fair. *See Good v. W. Va.-Am. Water Co.*, No. 14-1374, 2017 WL 2884535 (S.D. W. Va. July 6, 2017) (finding "no evidence of chicanery" and noting counsel's "abundance of experience" and the advanced stage of the litigation).

The monetary relief places the Settlement well within the range of possible approval. The Settlement creates a non-reversionary common fund of $14,000,000 for the benefit of Plaintiff and proposed class members. This amounts to more than $280 before claims for each of the 49,695 potential Settlement Class Members that have been identified in AILIC's records, and likely upwards of $500 to each Settlement Class Member that files a valid claim. Kaufman Decl. ¶ 5.

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs for it to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

This Settlement provides an excellent result for the class—monetary relief that far exceeds the relief afforded to claimants by other approved TCPA settlements—and although Settlement Class Members "receive less than the maximum value of their TCPA claims, … they receive a payout without having suffered anything beyond a few unwanted calls …, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation". *See, e.g., Simms*, 2018 U.S. Dist. LEXIS 245963, at *15-16 (collecting TCPA cases providing between $20 and $200 per claiming class member and finding that $256 per valid claim after fees, service award, and costs were deducted "is a clear indicator of fairness" (internal citation omitted)).

The Settlement here is the result of extensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this action. Kaufman Decl. ¶ 6. Class Counsel are particularly experienced in the litigation, certification, and settlement of nationwide TCPA class action cases. *Id*. ¶¶ 25-30 and Exhibit 1 thereto. Class Counsel zealously represented Plaintiff and the Settlement Class members' interests throughout the litigation and continue to do so. Moreover, the parties reached agreement only after two mediation sessions, intervening negotiations, and ultimately a mediator's proposal. Kaufman Decl. ¶ 7; *see, e.g., Rankins*, 2024 U.S. Dist. LEXIS 197597, at *15 (E.D.N.Y. Oct. 30, 2024) ("As to the parties' selected mediator, Jill Sperber, several courts have held that Ms. Sperber's involvement has supported a finding that class-action settlement agreements were fair. Additionally, as noted above, Plaintiffs represent that the mediation was one full day session and that the parties needed a second session and a mediator's proposal to come to an agreement. Based on the record in this case, there is no evidence or indicia suggesting that the negotiations were collusive." (cleaned up)). At all times the negotiations were at arms' length and free from collusion, and Plaintiff's counsel steadfastly advocated for substantial settlement relief and a streamlined process for distributing payments to Settlement Class Members. Kaufman Decl. ¶ 36.

Moreover, the Settlement is not conditioned on any Fee Award or Service Award. Defendant retains the right to object to Class Counsel's fee application and request for a Service Award for Plaintiff, and attorneys' fees and a service award will be paid on a similar timeline to Settlement Class Members' payments.

Finally, the Settlement provides an efficient and fair manner for distributing settlement funds to the maximum possible number of Settlement Class Members. Settlement Class Members will have the ability to submit claims for payment by submitting by mail or online a simple claim form that includes their name, address, and telephone number at which they received calls subject to the Settlement. Each Settlement Class Member that submits a valid claim will receive their *pro rata* share of the Settlement Fund after deduction of Settlement Administration Expenses and any Fee Award and Service Award awarded by the Court. Kaufman Decl. ¶ 37.

Based on their evaluation of these factors, Plaintiff and Plaintiff's counsel have determined that the Settlement is in the best interests of Plaintiff and the Settlement Class, who otherwise may have received nothing if this case proceeded. *Id*. ¶ 38.

For all these reasons, the Settlement is well-within the range of reasonableness and is fair and adequate. As a result, it should be approved, and notice should be sent to the Settlement Class.

## VI.     THE NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1); *see also* MCL Fourth § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Notice program satisfies this standard.

As recited in the Settlement and above, the Notice Program will inform Settlement Class members of the substantive terms of the Settlement. Notices will be sent by mail and email to any physical mailing addresses and email addresses submitted through TheFreeWillKit.com at the time

20

Settlement Class Members' leads were generated, or if no such information was submitted, to any physical mailing addresses and email addresses identified using third party services.

The mail and email notices will advise Settlement Class members of their options for remaining part of the Settlement, for objecting to the Settlement, Class Counsel's attorneys' fee application, for opting-out of the Settlement, and for submitting a claim. Relying primarily on contact information provided by Settlement Class Members themselves, the Notice Plan is designed to reach a high percentage of Settlement Class Members and exceeds the requirements of Constitutional Due Process.

The proposed forms of notice, attached as Exhibits B and C to the Settlement Agreement, are clear, straightforward, and provide Settlement Class members with enough information to evaluate whether to participate in the settlement. Thus, the Notice Program satisfies the requirements of Rule 23 and due process. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 808 (1985) (settlement notice must provide settlement class members an opportunity to present their objections). The Notice Program constitutes the best notice practicable under the circumstances, provides sufficient notice to the Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VII.    PROPOSED SETTLEMENT APPROVAL SCHEDULE

In connection with Preliminary Approval of the Settlement, the Court should also set a date and time for the Final Approval Hearing. Other deadlines in the Settlement approval process, including the deadlines for requesting exclusion from the Settlement Class or objecting to the Settlement, will be determined based on the date of the Final Approval Hearing or the date on which the Preliminary Approval Order is entered.

Class Counsel propose the following schedule:

| | |
|---|---|
| Settlement Administrator provides Initial Mailed Notice to Settlement Class Members | Within thirty (30) days after entry of the Preliminary Approval Order |

| Class Counsel's application for fees, expenses, and costs and a Service Award for Representative Plaintiff | No later than thirty (30) days prior to the Opt-Out Deadline |
|---|---|
| Last day for Settlement Class Members to submit Claim Forms and Opt-Out Deadline | Approximately sixty (60) days after the Notice Date |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | At least fifteen (15) days before Final Approval Hearing |
| Final Approval Hearing | Approximately one hundred and twenty (120) days from entry of the Preliminary Approval Order |

## VIII.   CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court grant this Motion and enter the submitted Proposed Order, preliminarily approve the parties' proposed Settlement Agreement, and establish a schedule to complete the tasks necessary to effectuate the proposed settlement.

Dated March 21, 2025                     Respectfully submitted,

/s/ Avi R. Kaufman
Avi R. Kaufman
kaufman@kaufmanpa.com
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Stefan Coleman
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street, Suite 900
Miami, FL 33130
Telephone: (877) 333-9427

Eric C. Bohnet
ebohnet@gmail.com

22

6617 Southern Cross Drive
Indianapolis, IN 46237
Telephone: (317) 750-8503

*Attorneys for Plaintiff and*
*the proposed Settlement Class*